# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| FELIX ROBERTO ROMANO, | ) |
| | ) |
| Plaintiff(s), | ) CIVIL ACTION NO.: 1:20-cv-22813 |
| | ) |
| v. | ) |
| | ) |
| KIMPTON HOTEL & RESTAURANT | ) |
| GROUP, LLC, D/B/A EPIC HOTEL | ) |
| | ) |
| Defendant(s). | ) |
| _____ | / |

## COMPLAINT and DEMAND FOR JURY TRIAL

Plaintiff, Felix Roberto Romano ("Mr. Romano" or "Plaintiff"), hereby brings this Complaint and Demand for Jury Trial against Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel ("Defendant" or "Kimpton"), and alleges as follows:

## NATURE OF THE CLAIM

1. This action seeks compensatory damages, punitive damages, declaratory relief, injunctive relief, and any other permissible legal damages for Defendant's violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000, *et. seq.* ("Title VII").

2. Plaintiff alleges that Defendant unlawfully discriminated against him on the basis of national origin and/or race, harassed him on the basis of his national origin and/or race, failed to pay adequate compensation or give Plaintiff opportunities to receive promotions on the basis of national origin and/or race, and retaliated against Plaintiff after he made complaints to human resources and the Equal Employment Opportunity Commission ("EEOC").

## THE PARTIES

3. Mr. Romano is a Hispanic male of Bolivian origin, who has been employed by Defendant as a banquet server since approximately December 2008.

4. Defendant, Kimpton Hotel & Restaurant Group, LLC, d/b/a Epic Hotel is a national hotel chain with its principal headquarters based in San Francisco, California. Kimpton operates 65 hotels with over 8,000 employees nationwide and revenues of over one billion dollars.

5. At all times material hereto, Kimpton had at least fifteen employees, and was therefore an "employer" within the meaning of Title VII.

## JURISDICTION and VENUE

6. This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. § 1331, as it arises under questions involving Title VII. This Court also has diversity jurisdiction under 28 U.S.C. §1332(a) insofar as the amount in controversy exceeds $75,000, exclusive of interests and costs, and Defendant is a foreign corporation doing business in the State of Florida while Plaintiff is a Florida resident.

7. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because it conducts substantial business in this District, some of the actions giving rise to the Complaint took place in this District, and all of Plaintiff's claims arise out of Defendant's operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District and the Defendant has caused harm to a Plaintiff residing in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed charges of discrimination with the EEOC alleging continuing discrimination by Defendant and was subsequently issued a Notice of Right to Sue dated January 14, 2020.

10. Plaintiff timely filed this action within the 90 day period contained in the Notice of Right to Sue and has otherwise complied with all conditions precedent to filing suit.

## FACTUAL ALLEGATIONS

11. Mr. Romano was originally hired by Defendant as a banquet server on or about December 2008.

12. Mr. Romano was eventually given a promotion to banquet captain at the Epic Hotel.

13. One of Kimpton's employees and/or agents, Banquet Director, Michael Poehlman ("Mr. Poehlman"), has made several disgusting, racist, cultural insensitive, and wholly inappropriate comments to Plaintiff and several other Kimpton employees.

14. Ever since Mr. Poehlman was hired by Defendant on or about the end of 2017 or beginning of 2018, Plaintiff has suffered constant emotional and mental abuse by Mr. Poehlman on account of his national origin and race.

15. Early on when Mr. Poehlman's employment at the Epic Hotel first commenced, he saw Plaintiff and several other Hispanic employees eating in the kitchen after they had finished a long and arduous banquet service.

16. Defendant's employees that work in the banquet department are often forced to work long shifts, sometimes an entire eight hours, before they are given an opportunity to take a break for lunch or to use the restroom. This in turn forces many of Defendant's employees working

in banquet, like Plaintiff, to hurriedly eat whatever food is available whenever they finish the prior banquet service or immediately before they begin the next banquet service.

17. Upon seeing Plaintiff and other Hispanic employees hurriedly eating before the next service, Mr. Poehlman sarcastically exclaimed, "Oh Look God Bless America."

18. This of course made Plaintiff and the other Hispanic employees feel hurt and ashamed on account of their national origin and for taking a break to eat lunch. This behavior by Mr. Poehlman not only violates Title VII, but state and federal employment laws requiring Defendant to allow its employees to take breaks for lunch, to use the restroom, etc.

19. Almost since Mr. Poehlman began working at the Epic Hotel he would refer to Plaintiff and other Hispanic employees as "beaners", because of their Hispanic race and Plaintiff's national origin.

20. For example, on numerous occasions in 2018 and 2019 Mr. Poehlman would directly refer to people of Hispanic origin as "ranchitos" or "these people".

21. Throughout 2018 Plaintiff made numerous complaints and reports to Defendant's human resources department and Defendant's managerial employees regarding Mr. Poehlman discriminatory actions.

22. Every single time, Plaintiff was rebuffed, ignored, or even made to feel he was in the wrong after reporting Mr. Poehlman's discriminatory behavior and abuse to management.

23. In fact, Plaintiff was the one that was punished after making justified and legitimate complaints against Defendant's employees for discriminatory and unfair treatment based on Plaintiff's race and/or national origin.

24. In the beginning of 2019, Plaintiff was beginning his shift and preparing for the upcoming banquet service.

25. Mr. Poehlman saw another of Defendant's employees, Nelson Vindel ("Mr. Vindel"), and began to imitate Mr. Vindel folding up a napkins.

26. Mr. Poehlman was implying that Mr. Vindel was too old and moving too slowly.

27. Then Mr. Poehlman told Plaintiff that he should find a reason to let Mr. Vindel go, because "his time was up."

28. On or about June 2019, Plaintiff feeling overwhelmed by the lack of staffing in the banquet department, asked Mr. Poehlman, if Ms. Wilda Loza ("Ms. Loza") another employee of Bolivian origin, could be put on the upcoming shift.

29. Mr. Poehlman responded by saying we do not need that "Indian", Ms. Loza.

30. This was incredibly hurtful and insensitive towards Plaintiff as he is also of Bolivian national origin.

31. On or about July 2019, Mr. Poehlman once again made inappropriate and unprofessional comments to Plaintiff, based on his race and/or national origin.

32. After a lunch event, Mr. Poehlman stated that all the "brownies" like, Ms. Nelly Ravelo ("Ms. Ravelo") who is also Hispanic, were friends and covering for each other.

33. Mr. Poehlman further stated that Plaintiff was lucky Stefani Mazer, Defendant's Catering Service Manager, was his friend as if it was up to Mr. Poehlman Plaintiff would already have been fired.

34. Yet another incident occurred in August 2019, when Plaintiff informed Mr. Poehlman that the staff did not have fuel to keep the food warm on the buffet.

35. Mr. Poehlman's response was that they go back to the "savage times like in your country and use wood sticks."

36. After the reporting of Mr. Poehlman's breach of proper work-place behavior, Plaintiff suffered a national origin and race-based retaliation campaign brought about by Kimpton's employees and/or agents.

37. For example, in September 2019, Mr. Poehlman complained to management regarding Plaintiff's poor performance, and even stated that he was only still an employee because of his friendship with Denise Chamorro of Human Resources.

38. This was completely false and another example of Mr. Poehlman race and national origin-based retaliation campaign against Plaintiff for justified complaints Plaintiff previously made to human resources.

39. Plaintiff was given numerous other write-ups and other negative remarks to his employee files as a result of unjustified complaints and fabrications made by Kimpton's managers, employees, and/or agents.

40. These write-ups were made in retaliation for Plaintiff's complaints to human resources regarding Kimpton's discrimination against Plaintiff on account of his race and/or national origin.

41. This was only made clearer to Plaintiff when he overheard Mr. Poehlman saying that he doesn't understand why the Epic Hotel continues to hire people that don't speak English.

42. Not willing to take any further abuse from Mr. Poehlman and unable to adequately perform his job duties, Plaintiff sought a transfer to another of Defendant's hotels.

43. Upon learning about Plaintiff's transfer request, Mr. Poehlman stated that if it were up to him, Mr. Poehlman would never approve Plaintiff's transfer and would have him fired.

44. At the end of 2019, Plaintiff was not only in fear for his job, but his well-being as Mr. Poehlman had made further aggressive and threatening comments toward him.

45. Defendant, despite having knowledge of its senior employees' actions, did not take any action against Mr. Poehlman or other senior level employees that were complicit in his actions.

46. In addition to this inhumane and grotesque treatment that would make Mr. Romano in fear for his safety, Plaintiff was also denied these promotions, raises, more hours, better shifts, etc. on account of his national origin and/or race, in direction violation of Title VII.

47. In fact, the denial of these opportunities was made by Kimpton as retaliation for the Plaintiff's complaints to human resources regarding inappropriate comments and unfair treatment by Epic Hotel's employees and agents about Plaintiff's national origin and/or race.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
National Origin Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

48. Plaintiff incorporate by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47, above.

49. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their national origin.

50. As alleged above, Plaintiff was discriminated against by Defendant on the basis of national origin.

51. Defendant deprived Plaintiff of employment opportunities on the basis of his national origin.

52. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

53. Defendant's unlawful actions were intentional, willful, malicious, and/or done with

reckless disregard to Plaintiff's right to be free from discrimination based on his national origin.

54. As such, Plaintiff further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

55. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

### SECOND CLAIM FOR RELIEF
National Origin Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

56. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47, above.

57. Plaintiff was subjected to harassment and discriminatory comments by Defendant's agents and/or employees, because of his national origin.

58. Defendant's agents' and employees' conduct was not welcomed by Plaintiff.

59. Defendant's agents' and employees' conduct was undertaken because of Plaintiff's national origin.

60. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

61. Plaintiff believed his work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

62. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

63. The harassment of Plaintiff was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

64. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of national origin and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

65. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

66. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on national origin.

67. As such, Plaintiff further seek compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

68. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF
Race Based Discrimination in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47, above.

70. Section 703 of Title VII, 42 U.S.C. § 2000e-2, prohibits employment practices that discriminate against persons on the basis of their race.

71. As alleged above, Plaintiff was discriminated against by Defendant on the basis of race.

72. Defendant deprived Plaintiff of employment opportunities on the basis of his race.

73. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount

to be proven at trial.

74. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on his race.

75. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

76. Plaintiff is entitled to his reasonable attorneys' fees and costs incurred in the prosecution of this action.

### FOURTH CLAIM FOR RELIEF
Race Based Discrimination (Hostile Work Environment) in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-2(a)

77. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47, above.

78. Plaintiff was subjected to harassment and discriminatory comments by Defendant's agents and employees, including Mr. Poehlman, because of their race.

79. Defendant's agents' and employees' conduct was not welcomed by Plaintiff.

80. Defendant's agents' and employees' conduct was undertaken because of Plaintiff's race.

81. The conduct was so severe or pervasive that reasonable persons in Plaintiff's position would find their work environment to be hostile or abusive.

82. Plaintiff believed his work environment to be hostile or abusive as a result of the conduct of Defendant's agents and employees.

83. Management level employees of the Defendant knew, or should have known, of the abusive conduct.

84. Plaintiff provided management level personnel and human resources with

information sufficient to raise a probability of race based harassment in the mind of a reasonable employer.

85. Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

86. Defendant did not exercise reasonable care to prevent harassment in the workplace on the basis of race and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

87. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

88. Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

89. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

90. Plaintiff is entitled to his reasonable attorneys' fees and costs incurred in the prosecution of this action.

## FIFTH CLAIM FOR RELIEF
Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-3(a)

91. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 47, above.

92. Section 704(a) of Title VII of the Civil Rights Act of 1964, *as amended*, prohibits employers from discriminating against an employee "because he has opposed any practice made

an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

93. Plaintiff made complaints to Defendant's agents and employees opposing Defendant's unlawful, discriminatory employment practices based on national origin and race.

94. As a result of Plaintiff's complaints, Defendant's agents and employees took materially adverse actions against Plaintiff.

95. Defendant's adverse actions constituted retaliatory workplace harassment.

96. Defendant's retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

97. As a direct, legal and proximate result of Defendant's retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

98. As such, Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

99. Plaintiff is entitled to the reasonable attorneys' fees and costs incurred in the prosecution of this action.

## DECLARATORY RELIEF ALLEGATIONS

100. A present and actual controversy exists between Plaintiff and Defendant concerning their rights and respective duties. Plaintiff contend that Defendant violated his rights under Title VII. Plaintiff is informed and believes and thereon alleges that the Defendant will deny these allegations. Declaratory relief is therefore necessary and appropriate.

101. Plaintiff seeks a judicial declaration of the rights and duties of the respective parties.

## INJUNCTIVE RELIEF ALLEGATIONS

102. No plain, adequate, or complete remedy at law is available to Plaintiff to redress

the wrongs addressed herein.

103. If this Court does not grant the injunctive relief sought herein, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief as follows:

A. For a declaration that Defendant's actions, policies, and practices as alleged herein are unlawful;

B. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

C. For compensatory damages for Plaintiff, including but not limited to, emotional pain and suffering, in an amount to be proven at trial;

D. For punitive damages in an amount to be determined at trial;

E. For liquidated damages;

F. For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

G. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

H. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), and other laws; and

I. For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: July 8, 2020.                    Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
350 Lincoln Road, Suite 2051B
Miami Beach, FL 33139
Tel: (305) 709-8877
Fax: (786) 460-8333
sgenadiev@theglawgroup.com


By:     */s/ Simeon G. Genadiev*
        **SIMEON G. GENADIEV, ESQ.**
        Florida Bar No.: 100918